Filed 8/14/26  In re K.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | C105209 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, <br>     Plaintiff and Respondent, <br><br> v. <br><br> A.M., <br>     Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2025-0000325) |

Appellant A.M. (mother), mother of minor K.B. (minor), appeals from the juvenile court's jurisdictional orders and dispositional judgment.  (Welf. & Inst. Code, §§ 300, 361, 395.)[1]  Mother contends that there was insufficient evidence to support the juvenile court's exercise of jurisdiction, the court's order removing minor from mother's custody, and the finding that the San Joaquin County Human Services Agency (Agency) made reasonable efforts to eliminate the need for removal.  We disagree and affirm.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

I.

Mother and W.B. (father) were married in March 2021 and lived together. They are the parents of minor (born in August 2024) and minor's sibling. Minor also has two maternal half siblings and five paternal half siblings.

Father's other children were the subject of several prior dependency cases. In 2017, two of minor's paternal half siblings were placed in a guardianship with their paternal grandmother after family maintenance services were unsuccessful. In that case, it was alleged that father drove under the influence of alcohol with the children in his car and forcefully slapped the face of one of the children during a violent altercation with that child's mother. In 2018, parental rights were terminated as to another of minor's paternal half siblings, who was adopted by the paternal grandmother. In that case, it was alleged that father had a history of engaging in domestic violence, a violent criminal history, and ongoing problems with substance abuse, including use of methamphetamine, marijuana, and alcohol, which impaired his ability to responsibly parent and supervise the child. In 2021, parental rights were terminated as to another of minor's paternal half siblings, who was also adopted by the paternal grandmother. In that case, it was alleged that father had a history of domestic violence and an ongoing substance abuse problem. The fifth paternal half sibling was the subject of voluntary family maintenance services from 2009 to 2010, but the record contains no additional information about that case.

There was also a prior dependency case related to both parents. In September 2022, minor's sibling and two maternal half siblings were detained from the parents' custody. There was evidence in that case of mother's ongoing substance abuse, including use during pregnancy. The parents exposed the children to domestic violence on multiple occasions, including throwing and breaking things, screaming, and making verbal threats. Father flashed a gun at one of the children, had a violent criminal history, and struggled with ongoing substance abuse, including an active problem with alcohol.

2

Parental rights as to those children were terminated in November 2023, and they were adopted by the maternal grandmother.

## II.

In September 2025, the Agency learned that mother had concealed minor during the Agency's investigation relating to one of minor's paternal half siblings. That same month, the Agency filed a section 300 petition on behalf of minor, alleging that she was at risk of physical harm because of the parents' failure or inability to supervise or protect her. The petition alleged that mother had a history of unaddressed substance abuse, domestic violence, and failures to reunify with her other children. As to father, the petition alleged that he had an extensive history of substance abuse and a lengthy criminal history, including a pending charge for violating a domestic violence order, which, like his substance abuse, placed minor at risk of abuse and neglect. The petition additionally alleged that minor was at risk due to the parents' failure to address the concerns about substance abuse and domestic violence during or since the sibling's and half siblings' cases.

The Agency's jurisdiction/detention report stated that, during the social worker's visit to the home, mother said that she was attending Narcotics Anonymous. Mother could not remember how long she had been clean but stated it was over a year. She initially said she would not complete a drug assessment but later agreed, stating, "I will if I have to, but I don't want any services." She and father were committed to making their marriage work. Mother said father had been clean since his release from jail in July 2025. After responding to questions relating to possible Native American ancestry, mother declined to answer further questions, stating she did not want help from the social workers. Father refused to answer the social worker's questions. The social worker observed him in the kitchen drinking several bottles of beer and offering beer to mother.

The maternal grandmother believed that mother was clean from drugs, but the maternal grandmother had minor in her care for the last two months. The paternal

3

grandmother, who had guardianship of one of the paternal half siblings, found the half sibling's increased mental health issues, anger, and behavior too challenging and had returned the child to the parents' care. The maternal grandmother said that the half sibling had been exhibiting dangerous behavior, which led the maternal grandmother to offer to care for minor in her home while the parents worked with the half sibling.[2]

The detention hearing took place on September 30, 2025. The parents both attended, but mother left before the proceedings concluded. The juvenile court ordered minor detained and placed with the maternal grandmother.

III.

In October 2025, the Agency filed its jurisdictional/dispositional report in which it recommended continued out-of-home placement for minor. The Agency continued to express concern for minor's safety and well-being due to the parents' history of unaddressed substance abuse and domestic violence and their failure to reunify with their other children. The Agency had referred mother to parenting education classes and counseling, and had offered father similar services, but the parents failed to fully engage. Father set up an individual counseling appointment but did not make contact with the social worker. Mother had not completed a drug court assessment and refused to meet with the social worker. The Agency recommended reunification services for the parents, noting as to mother the importance of her "demonstrat[ing] that she is able to care for her children in a safe, stable, and drug free environment."

The report described father's lengthy criminal history, his history of domestic violence, and a substantiated allegation of physical abuse of one of his other children. The report also noted that father had a pending criminal case for violating a court order regarding domestic violence and an active arrest warrant.

---

[2] The paternal half sibling was detained from the parents' home the week before. That case remained open but is not the subject of the current appeal.

At the November 25, 2025 contested jurisdictional/dispositional hearing, the parties informed the juvenile court that mother and the Agency had agreed to resolve jurisdiction with modifications to the language in the petition. Mother's counsel confirmed that mother agreed with the changes, notwithstanding that mother did not necessarily believe there was an issue with her ability to parent. Mother's counsel submitted on jurisdiction and noted that it was understood that mother would begin drug testing that day. The agreement was that mother would be on a patch, submit to a urine test, and would be subject to random drug testing instead of being sent to drug court. Mother maintained that she had been clean for over a year and agreed to demonstrate her sobriety by testing continuously for four months.

Father, who did not appear at the hearing, remained in the home, had an open substance abuse case, and was not fully engaged in services. He had moved back into the home in July 2025 after being released from jail. The juvenile court noted that this put mother in a "terrible position" and that father needed to leave the home. When mother's counsel asked if the court could order him to leave the home, the court responded that father would need to be served and brought back to court for it to do so. Counsel for the Agency stressed, "Now, … I just want to be clear that this plan isn't going to work today if the mother does not test clean. [¶] Now, she did indicate that she has used marijuana on one occasion, so that may show up on her test. But the requirement of this plan is that she test today … that she test clean. That she wear the patch for 30 days. And that she produce clean tests. [¶] If at the end of the 30 days the mother has no positive tests, then the Agency will change the recommendation to family maintenance."

The juvenile court stated that the period might need to extend beyond 30 days if mother was still testing positive for marijuana. It further noted that mother would need to secure a protective order against father, emphasizing the importance of sufficient safeguards to protect mother and minor. When mother interjected that father had "change[d] a lot because of the removal of his son," the court expressed concern that

5

mother was "backtracking," causing it to "lose faith." The court ultimately agreed to the parties' proposal with the conditions that mother test clean that day, that she wear a drug patch, and that father leave the home. The Agency agreed that the plan was to continue the dispositional hearing for 30 days and, if mother was in compliance, the disposition would be for family maintenance, with mother continuing to test for three months.

When the Agency suggested moving forward with the test and resuming the hearing later that day, the juvenile court asked mother, "Is it going to be clean?" Mother responded, "I smoked weed." The court said, "I mean besides the weed." Mother answered, "That should be it." The court asked, "You're not sure?" Mother responded, "The only reason I say I'm not sure is because, like I said, my husband has been telling CPS different things that I'm kind of worried about. I don't know." The court ordered mother to test and then return.

The hearing resumed approximately an hour and a half later. Mother did not appear, and her counsel could not explain her absence. The juvenile court found that mother had voluntarily absented herself and granted the Agency's request to withdraw the changes to the petition that had been part of the agreed resolution. Mother's counsel asked for a continuance; in the alternative, counsel lodged an objection to jurisdiction and disposition.

The juvenile court denied the request to continue, found the allegations in the petition true, and adjudicated minor a dependent child of the court. The court found by clear and convincing evidence that minor should be removed from her parents' physical custody. It ordered reunification services for both parents.

Mother timely appealed.

DISCUSSION

I.

Mother first contends that insufficient evidence supports the juvenile court's exercise of jurisdiction over minor. Mother argues that there was inadequate evidence

6

that minor was at substantial risk of harm in her care; and she maintains that the past harm to the parents' other children, without more, was insufficient to demonstrate a current risk to minor. She does not, however, challenge the petition's multiple allegations relating to the risk to minor resulting from father's ongoing substance abuse, lengthy and pending criminal history, and pattern of violent behavior, including domestic violence in the presence of his children.

"The juvenile court exercises jurisdiction with respect to a child when the child has been endangered in any manner described by section 300; it acquires personal jurisdiction over the child's parents through proper notice." (*In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316.) "For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent." ' [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492, overruled on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 282.) "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Dependency jurisdiction is appropriate where substantial evidence supports at least one jurisdictional finding, even if other findings lack adequate support. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Here, the sustained and unchallenged allegations against father are sufficient to establish the juvenile court's jurisdiction. We thus need not and do not address mother's challenge to the juvenile court's jurisdictional findings relating to her. (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 451; *In re Christopher M.*, *supra*, 228 Cal.App.4th at p. 1316.)

II.

Mother next contends that the juvenile court's removal order is unsupported by substantial evidence. We disagree.

Before removing a child from parental custody, the juvenile court must find clear and convincing evidence of one of a number of specified circumstances, including that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody." (§ 361, subd. (c)(1).) "In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.) The child welfare agency need not show past harm to the child; instead, the statute focuses on averting harm. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

"We review a dispositional order removing a child from a parent for substantial evidence, ' "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." ' [Citation.] '[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.' [Citation.] In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could

8

have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.)

Here, the record shows that father had an extensive history of abusing substances, engaging in domestic violence, and endangering his children. The record also shows that these issues persisted: he drank alcohol in the presence of the social worker, had a pending criminal case related to violating a domestic violence order, and refused to engage in services. Even if mother herself were not continuing to abuse substances, mother failed to demonstrate an ability to protect minor from father such that minor could remain safely in the home. Father was still living in the home after his release from custody, and mother minimized his behaviors. This evidence of mother's failure to take action to protect minor from father, who, she does not dispute, placed minor at substantial risk of harm, was sufficient to support the juvenile court's removal order.

Mother contends that the Agency failed to consider any reasonable means to protect minor short of removal, but the record does not support this claim. As explained above, the Agency attempted to negotiate a plan under which the disposition hearing would be continued for 30 days, during which time mother would test clean, father would move out of the home, and mother would obtain an order protecting herself and minor from father. Mother, however, chose not to test and left the hearing. Mother also faults the juvenile court for not considering mother's own plan for retaining custody while obtaining assistance from the maternal grandmother, but mother presented no such plan. Instead, the record shows that mother told the Agency that she did not want to participate in services. And mother's refusal to test and her premature departure from the hearing effectively prevented the development of an alternative to avoid removal. There is

9

substantial evidence to support the juvenile court's decision to remove minor from mother's custody.

III.

Finally, mother contends that there was insufficient evidence to show that the Agency made reasonable efforts to eliminate the need for removal. Again, we disagree.

Before removing a child from parental custody, the juvenile court must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e); see generally *In re L.G.* (2026) 118 Cal.App.5th 1208, 1232-1233.) Here, the Agency's report included a list of efforts it made to avoid removal, including that it had maintained regular contact with minor and service providers, participated in a family team meeting and a regional center meeting, and completed a family finding referral. The Agency referred mother to parenting education and individual counseling and submitted a financial agreement for sessions of counseling to address mother's "mental health, anger issues, childhood trauma, to assess her ability/willingness to care for her children, and to address her substance use." Moreover, as explained above, the Agency negotiated a plan to continue disposition, implement steps that would allow for minor's safe return to mother's home, and change the disposition plan to family maintenance. Under these circumstances, there was ample evidence supporting the juvenile court's finding that the Agency made reasonable efforts to eliminate the need for removal.

Mother argues that the juvenile court failed to adequately state the facts upon which the decision to remove minor was based, as required by section 361, subdivision (e). This issue is forfeited because mother did not raise it as a separate point of error. (Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must "state each point under a separate heading or subheading summarizing the point"].) In any event, the juvenile court expressly stated that its decision to remove minor "was based on the facts contained

10

in paragraph 5-A on page 54 of the [Agency's] report," which finding was, in turn, "based on" a detailed list of the conditions supporting jurisdiction and that parents had made no progress in eliminating those conditions.

## DISPOSITION

The orders and judgment of the juvenile court are affirmed.


/s/ _____
FEINBERG, J.

We concur:



/s/ _____
HULL, Acting P. J.



/s/ _____
MAURO, J.